UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61765-Civ-COOKE/BANDSTRA

WHITE PARK BAY SOFTWARE LIMITED,

    Plaintiff

v.

XID, INC.,

    Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before me on Plaintiff, White Park Bay Software Limited's ("WPBSL") Motion for Summary Judgment. [ECF NO. 15]. For the reasons stated below, the Motion for Summary Judgment is granted.

### *I. BACKGROUND*

On May 29, 2009, WPBSL entered into a publishing and distribution agreement (the "Agreement") whereby WPBSL agreed to develop two video games, Monster Trucks ("Game 1") and Pacific Liberator ("Game 2") (collectively, the "Games") for Defendant XID, Inc. ("XID"), in exchange for payment. (Pl.'s Statement of Undisputed Material Facts, ¶¶ 3, 7 [ECF No. 15-1]); (Def.'s Opp. to Pl.'s Statement of Undisputed Material Facts, ¶¶ 3, 7] [ECF No. 19-1]). Pursuant to the terms of the Agreement, the payment was to be made in three installments, referred to in the Agreement as "milestones." (Compl., ¶ 7 [ECF No. 1]); (Ans., ¶ 7 [ECF No. 8]). The first payment milestone required XID to pay WPBSL $25,000 per Game within twelve days of the execution of the Agreement. [*Id.*]. The second payment milestone required XID to pay WPBSL $25,000 per Game within twenty days of the final approval of the Games by

Nintendo of America, Inc. ("Nintendo"). [ECF No. 15-1, ¶ 8; ECF No. 19-1, ¶ 8]. Finally, the third payment milestone required XID to pay WPBSL $25,000 per Game within twenty-five days from the commercial release date of each Game. [ECF No. 15-1, ¶ 20; ECF No. 19-1, ¶ 20]. In accordance with the Agreement's payment terms, XID paid WPBSL $50,000 within twelve days of the execution of the Agreement. [ECF No. 15-1, ¶ 7; ECF No. 19-1, ¶ 7].

On or about August 20, 2009, Nintendo approved Game 1. [ECF No. 15-1, ¶ 20; ECF No. 19-1, ¶ 20]. On August 25, 2009, WPBSL issued an invoice to XID requesting payment in the amount of $25,000 for the second payment milestone. [*Id.*]. After learning that Nintendo also approved Game 2, on September 3, 2009, WPBSL issued a second invoice to XID requesting payment in the amount of $25,000. [ECF No. 15-1, ¶ 14; ECF No. 19-1, ¶ 14].

WPBSL learned that the Games were being advertised and sold on Amazon.com through Zoo Games, Inc. ("Zoo Games"), on September 10, 2009. [ECF No. 15-1, ¶ 17; ECF No. 19-1, ¶ 17]. On September 16, 2009, XID confirmed that Nintendo had approved the Games. [ECF No. 15-1, ¶ 18; ECF No. 19-1, ¶ 18]. In response to WPBSL's discoveries, on September 18, 2009, WPBSL sent a letter to XID, demanding payment for amounts due and owing under the second payment milestone. Notwithstanding the demands for payment, XID did not remitted payments associated with the second payment milestone, nor has XID remitted payments associated with the third payment milestone. (Def.'s Opp. to Pl.'s Mot. for Sum. J. [ECF No. 19]).

On November 4, 2009, WPBSL filed a Complaint seeking a judgment against XID for breach of contract (Count I) and unjust enrichment (Count II). [ECF No. 1]. Count II was dismissed on May 10, 2010 [ECF No. 23]. On February 24, 2009, WPBSL filed a Motion for Summary Judgment as to Count I of the Complaint [ECF No. 15], alleging that there were no material disputes that a valid Agreement existed between the parties and that XID breached the

Agreement by failing to remit payment. On March 9, 2010, XID filed a Response to WPBSL's Motion for Summary Judgment [ECF No.19], to which WPBSL filed a Reply [ECF No. 21]. After review of the Motion for Summary Judgment, as well as the subsequent Response and Reply, I directed the parties to file supplemental memoranda on the following issue: "Is the non-infringement warranty contained in the Agreement breached as a result of mere allegations of potential infringement of intellectual property rights belonging to third parties, or does breach of the non-infringement warranty require that the intellectual property third-party holders make a claim, or put XID on notice of a potential claim, with respect to infringement?" [ECF No. 27]. The parties submitted their memoranda, and I will now address the merits of their arguments.

## II.  LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial ... [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.). If a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007)(citation omitted).

### *III. DISCUSSION*

WPBSL argues that it is entitled to summary judgment as a matter of law because it has established a prima facie case for breach of contract.  In order to bring a valid claim for breach of contract under Florida law, the plaintiff must prove "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

XID does not dispute the existence or validity of the Agreement.   Nor does XID dispute its failure to remit payment to WPBSL upon receipt of WPBSL's invoices and demand letters. However, XID has asserted an affirmative defense that WPBSL failed to perform a condition precedent to this breach of contract claim by failing to provide XID Games with licensed intellectual property rights. (Aff. Def., ¶¶ 1-2 [ECF No. 8].

In support of its affirmative defense, XID offers the affidavit of its Chief Operating Officer, Reto Bodmer (the "Bodmer Affidavit" [ECF No. 19-2]), which asserts that the Games "contained a number of digital graphics . . . designed by well known companies."  [ECF No. 19-2, ¶ 3].  The Bodmer Affidavit further declares that WPBSL did not provide the requisite proof that it obtained the necessary intellectual property licenses.  [*Id.*, ¶ 5]. WPBSL alleges that the Bodmer Affidavit "should be summarily ignored as it does not comply with the requirements of Federal Rules of Civil Procedure, in particular Rule 56(e)(2)." [ECF No. 21 at 3]. Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Pro. 56(e)(2). The Bodmer Affidavit refers to the use of images of vehicles and planes found in the Games and sets out specific facts regarding the alleged infringement of the intellectual rights of third parties. It does not violate Rule 56(e)(1).

XID further claims that WPBSL's failure to satisfy a condition precedent to the Agreement was plead with specificity, in accordance with Federal Rule of Civil Procedure 9(c). Fed.R.Civ.P. 9(c); *Myers v. Cent. Fla. Invs., Inc.*, 592 F. 3d 1201, 1224 (11th Cir. 2010) ("when denying that a condition precedent has occurred or been performed, a party must do so with particularity"). However, XID's allegation that WPBSL's delivery of non-infringing and/or licensed Games was a condition precedent to WPBSL's breach of contract claim remains unsupported.

"As a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So.2d 749 (Fla. 4th DCA 2008) (citing *In re Estate of Boyar*, 592 So.2d 341, 343 (Fla. 4th DCA 1992); *see also Gunderson v. Sch. Dist. of Hillsborough County*, 937 So.2d 777, 779 (Fla. 1st DCA 2006) (holding provisions of a contract will be considered conditions precedent or subsequent only where the express wording employs conditional language). XID has not identified an express term in the Agreement that contains the requisite conditional language that would support its argument that a condition precedent exists.

In fact, the Agreement contains an express non-infringement warranty coupled with an

indemnity provision that obligates WPBSL to protect and make XID whole if the Games infringed on a third party's intellectual property rights. Section 6.1.2 of the Agreement sets out the non-infringement warranty clause:

> Neither the Game nor any of the Games' component parts or materials do or shall infringe any intellectual property rights of any non-party to this Agreement . . .

[ECF No. 1, Ex. A ¶ 6.1.2].

> Section 6.2 of the Agreement stipulates, in pertinent part, as follows:
>
> [WPBSL] agrees to defend, indemnify and hold [XID] . . . harmless from any and all claims . . . made by third parties against [XID] or suffered or incurred by [XID] due to any breach or alleged breach of [WPBSL]'s representations, **warranties**, covenants, obligations or agreements made herein.

[ECF No. 1, Ex. A ¶ 6.2] (emphasis added).

The non-infringement warranty contained Section 6.1.2 can only be breached, and the indemnity provision contained in Section 6.2 can only be triggered, if a third party *makes a claim* that its intellectual property rights had been infringed by the Games. The evidence in the record is undisputed, however, no third party has come forward and claimed that their intellectual property rights have been infringed by the Games. I therefore find that the non-infringement warranty contained in the Agreement has not been breached, and cannot act to relieve XID from its contractual obligations,.

My interpretation of the non-infringement warranty contained in the Agreement is consistent with the treatment given to non-infringement warranties found in both the Uniform Commercial Code, adopted in Florida, and the Uniform Computer Information Transaction Act. Under both model codes, non-infringement warranties are only breached if third parties come forward and actually make claims for intellectual property infringement. *See* Uniform Commercial Code 2-313(3); Fla. Stat. 672.312(3); Uniform Computer Information Transactions

Act § 401.  Courts interpreting the model codes have found that a "rightful claim" is "a nonfrivolous claim of infringement that has any significant and adverse effect on the buyer's ability to make use of the purchased goods" or a claim casting "a substantial shadow on the purchaser's title."  *Pacific Sunwear of Cal., Inc. v. Olaes Enters., Inc.*, 167 Cal. App. 4th 466, 470 (Cal. Ct. App. 2008); *Frank Arnold Contractors, Inc. v. Vilsmeier Auction Co., Inc.*, 806 F.2d 462, 464-65 (3d Cir. 1986).  Here, there has been no claim, rightful or otherwise, by a third party alleging that the Games infringe on its intellectual property rights.

XID is not without recourse if a third party does eventually come forward to claim that the Games infringe on its intellectual property rights.  At such time, XID could rely on the indemnity provision of the Agreement and demand that WPBSL indemnify XID for any losses incurred as a result of the third party's claims.

### *IV. CONCLUSION*

For the reasons set forth above, I **ORDER** and **ADJUDGE** as follows:

1. WPBSL's Motion for Summary Judgment [ECF No. 15] is **GRANTED**.
2. XID shall pay $100,000.00 to WPBSL.
3. WPBSL shall file a Motion setting forth the basis and calculation of the pre and post-judgment interests within fourteen (14) days from the date of this order.
4. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 31st day of August 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*